**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

NO. 5:09-CR-00307-FL-1
NO. 5:11-CV-00582-FL

BRIAN JOHNSON,                                  )
                                                )
       Petitioner,                          )
                                                )
v.                                              )          **MEMORANDUM AND**
                                                )          **RECOMMENDATION**
UNITED STATES OF AMERICA,                       )
                                                )
       Respondent.                          )
_____                 )

      This cause comes before the Court upon respondent government's motion to dismiss (DE-69) petitioner Brian Johnson's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody ("motion to vacate") (DE-65). Johnson has responded (DE-75), and, accordingly, the motion to dismiss is ripe for adjudication.   Pursuant to 28 U.S.C. § 636(b)(1), this matter is before the undersigned for the entry of a memorandum and recommendation.   For the following reasons, it is hereby RECOMMENDED that the government's motion to dismiss (DE-69) be GRANTED.

**I.  BACKGROUND**

      On October 22, 2009, the grand jury returned a five-count indictment charging Johnson in count one with conspiring to interfere with commerce by robbery and aiding and abetting, in violation of 18 U.S.C. §§ 1951 and 2.  Counts two and three of the

indictment charged Johnson with interference with interstate commerce by robbery, and count five charged him with aiding and abetting. Count four of the indictment charged Johnson's co-defendant, Quinton Battle, with an additional count of interference with interstate commerce by robbery. Count one of the indictment set forth the overt acts supporting the conspiracy charge as follows:

In furtherance of the conspiracy and to effect the objects thereof, BRIAN JOHNSON, and QUINTON BATTLE and other individuals unknown to the Grand Jury, committed the following overt acts, among others, within the Eastern District of North Carolina and elsewhere:

1. On or about September 13, 2008, Joseph Tinsley, put a knife to the throat of a clerk at the Family Dollar Store, located at 4654 Capital Boulevard, Raleigh, North Carolina, and proceeded to rob the store while BRIAN JOHNSON operated as a lookout.

2. On or about September 13, 2008, after the robbery, BRIAN JOHNSON received a share of the proceeds of the robbery.

3. On or about January 11, 2009, Anastasia Richardson, placed a call to Papa John's, located at 3591 Maitland Drive, Raleigh, North Carolina, and ordered food to be delivered to 1331 Park Glenn Drive, Raleigh, North Carolina, for the purpose of setting up the driver to be robbed.

4. On or about January 11, 2009, BRIAN JOHNSON, Joseph Tinsley, and Christopher Clay, beat and robbed the Papa John's delivery person when he arrived at 1331 Park Glenn Road with the food delivery.

5. On or about January 16, 2009, Anastasia Richardson, placed a call to Wang's Kitchen located at 4701-129 Atlantic Avenue, Raleigh, North Carolina, and ordered food to be delivered to 1331 Park Glenn Drive, Raleigh, North Carolina, for the purpose of setting up the driver to be robbed.

6. On or about January 16, 2009, QUINTON BATTLE, Joseph Tinsley, and Christopher Clay robbed the Wang's Kitchen delivery person when he arrived at 1331 Park Glenn Drive, Raleigh, North Carolina, with the food delivery.

7. On or about February 5, 2009, Anastasia Richardson, made a telephone call to Domino's Pizza located at 3677 New Bern Avenue, Raleigh, North Carolina, and ordered food to be delivered to 3229 Calumet Drive, Raleigh, North Carolina, for the purpose of setting up the driver to be robbed.

[8]. On or about February 5, 2009, BRIAN JOHNSON, and Joseph Tinsley robbed the Domino's Pizza delivery person when he arrived at 3229 Calumet Drive, Raleigh, North Carolina, with the food delivery.

Indictment, 2-3, DE-1.

On February 4, 2010, Johnson pled guilty pursuant to a written plea agreement to count one of the indictment. (DE-35, DE-37). As part of the plea agreement, Johnson agreed to

waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any postconviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea.

Plea Agreement, 1-2, DE-37. The plea agreement further noted that the maximum term of imprisonment for Johnson's crime was twenty years' imprisonment, and that

the Court will take into account, but is not bound by, the applicable United States Sentencing Guidelines, that the sentence has not yet been determined by the Court, that any estimate of the sentence received from any source is not a promise, and that even if a sentence up to the statutory maximum is imposed, the Defendant may not withdraw the plea of guilty.

*Id.* at 4. For its part, the government agreed to, *inter alia*, dismiss counts two, three and

five of the indictment, and to dismiss an additional indictment in a separate case against Johnson. *Id.* at 5. Both parties agreed that a downward adjustment of two or three levels would be warranted for acceptance of responsibility pursuant to U.S.S.G. §3E1.1, unless "Defendant's conduct prior to sentencing changes the circumstances with respect to any such factors." *Id.* at 6. This Court approved the plea agreement on February 4, 2010, following a hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. (DE-35, DE-37, DE-58).

In preparation for sentencing, the United States probation office submitted its presentence investigation report ("PSR") to the district court on April 30, 2010. (DE-43). According to the PSR, Johnson initially declined, upon the advice of counsel, to discuss the charged offense during his presentence interview on February 9, 2010. PSR ¶ 18. However, Johnson submitted a written statement accepting responsibility for the conspiracy: "I, BRIAN JOHNSON, accept responsibility for my participation in a conspiracy to commit robberies with Joseph Tinsley and others that affected several individuals and businesses in the Raleigh area. I apologize to the Court and my community for my criminal conduct." *Id.* On February 19, 2010, following Johnson's plea of guilty, he was debriefed by the case agent. During the debriefing, Johnson denied having any knowledge that the three robberies were going to take place. *Id.* Because Johnson denied his involvement in the offense, the PSR recommended that no reduction in the offense level was warranted pursuant to U.S.S.G. § 3E1.1. PSR ¶ 83.

The PSR further noted that, in accordance with section 1B1.2(d) of the Sentencing

4

Guidelines, a "conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." PSR, Part D,13; U.S.S.G. § 1B1.2(d). Accordingly, the PSR held Johnson accountable for each of the three robberies outlined in the overt acts section of count one of the indictment. The PSR calculated Johnson's total offense level at 32, with a criminal history category of IV. With this offense level and criminal history category, the recommended sentencing range for Johnson under the Sentencing Guidelines was 168 to 210 months' imprisonment. PSR ¶ 87.

Defense counsel objected to the PSR on several grounds, arguing, *inter alia*, that Johnson was not involved in the robbery of the Family Dollar store and should not be held accountable for that particular robbery. Addendum PSR ¶ 2, DE-43. Defense counsel also argued there was no factual basis to support a two-level increase for carjacking. *Id.* at ¶ 3. In addition, defense counsel filed a sentencing memorandum (DE-41) requesting a downward variance and a sentence of 97 months.

The district court held a sentencing hearing for Johnson on May 13, 2010 and expressly complimented defense counsel on the sentencing memorandum: "You've also done a very good job with a sentencing memorandum that's been given to me. Very well thought out. I reviewed this and I'm not saying I agree with you, but I have reviewed it and I appreciate the time that went into that." Sentencing Hr'g Tr. 7:5-9, DE-57. Defense counsel pursued his objections at the hearing, maintaining that Johnson had no

5

involvement with the Family Dollar store robbery or the carjacking, and that neither incident should be considered in sentencing Johnson. Sentencing Hr'g Tr. 8-10. In response, the government called case agent James Nickel, a detective with the Raleigh Police Department, to testify as to Johnson's involvement with both the Family Dollar store robbery and the carjacking. *Id.* at 10-24. Upon considering the evidence, the district court overruled Johnson's objections, finding that Johnson participated in the Family Dollar store robbery by serving as a look-out and was also associated with the robbery involving the carjacking. *Id.* at 27:10-14. The district court further determined that by denying his participation in the robberies, Johnson had "acted in a manner inconsistent with acceptance of responsibility" and that no reduction was warranted. *Id.* at 28:20-21. After hearing argument by counsel and a statement by Johnson, the district court sentenced him to a term of imprisonment of 198 months. *Id.* at 38:8-9. In accordance with the plea agreement, the district court dismissed counts two, three, and five of the indictment, as well as the indictment in the separate case against Johnson. *Id.* at 38:9-11.

Johnson appealed to the United States Court of Appeals for the Fourth Circuit, which, on March 7, 2011, dismissed the appeal as barred by Johnson's waiver of appellate rights in his plea agreement. (DE-61). In its decision, the Fourth Circuit concluded that Johnson's waiver was knowing and voluntary. Johnson did not seek review by the Supreme Court.

Johnson filed a pro se motion to vacate his sentence on October 21, 2011. (DE-65).

The government moved to dismiss Johnson's motion to vacate on December 6, 2011. (DE-69). Counsel for Johnson subsequently entered a notice of appearance (DE-74) and filed a response to the government's motion to dismiss on Johnson's behalf. (DE-75). As grounds for the motion to vacate, Johnson contends his guilty plea was involuntary and that he received ineffective assistance of counsel. Respondent government asserts these issues are without merit and asks the Court to dismiss Johnson's motion to vacate.

## II.  Legal Standards

### A.  Motion to Dismiss

The government seeks dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, a plaintiff must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The facts alleged must "raise a right to relief above the speculative level," id. at 555, and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

7

statements do not suffice." *Id.* A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 1950. Without such "heft," claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with" a defendant's liability, Twombly, 550 U.S. at 557, fail to nudge claims "across the line from conceivable to plausible." *Id.* at 570.

## B.  Effect of Petitioner's Guilty Plea

A valid guilty plea constitutes admission of the material elements of the crime. McCarthy v. United States, 394 U.S. 459, 466 (1969). The sworn representations made by a criminal defendant at plea proceedings "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Furthermore, a guilty plea normally waives any claim based on non-jurisdictional errors occurring prior to the plea. Tollett v. Henderson, 411 U.S. 258, 267 (1973). In *Tollett*, the Supreme Court concluded that an intelligent and voluntary plea of guilty generally bars habeas review of claims relating to the deprivation of constitutional rights that occurred before the defendant pleaded guilty. The Supreme Court observed that "[t]he focus of federal habeas inquiry is the nature of [defense counsel's] advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Id.* at 266-67. Thus, in a collateral attack, a petitioner may only challenge the voluntary and intelligent character of a plea, such as by demonstrating that he received ineffective assistance of counsel. *Id.*

8

Notably, statements made by a defendant during a hearing to accept a guilty plea are subject to a strong presumption of veracity, and challenges under 28 U.S.C. § 2255 that contradict these statements may generally be dismissed:

> '[A] defendant's solemn declarations in open court . . . "carry a strong presumption of verity'" . . . because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. . . . 'Indeed, because they do carry such a presumption, they present "a formidable barrier in any subsequent collateral proceedings.'" Thus, in the absence of extraordinary circumstances . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false." Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated–"permitting quick disposition of baseless collateral attacks."

United States v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005) (internal citations and quotations omitted).

## C.  Ineffective Assistance of Counsel

Johnson asserts his counsel was constitutionally deficient.  To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-pronged test.  Strickland v. Washington, 466 U.S. 668, 686-87 (1984).  First, a petitioner must show that the representation he received fell below an objective standard of reasonableness.  *Id.* at 688. This Court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight."  *Id.* at 689.  Therefore, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." *Id.* Concerning the second prong in the context of a guilty plea, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

With these legal precepts in mind, the undersigned considers Johnson's claims.

## III.  ANALYSIS

### A.  Ground One: Involuntary Guilty Plea

Johnson contends his plea of guilty was involuntary "because he did not have a full understanding as to the consequences of the plea." Mot. Vacate, 4, DE-65. Specifically, Johnson asserts he did not understand that by pleading guilty to conspiracy, the underlying robberies would be attributed to him for purposes of sentencing in accordance with U.S.S.G. § 1B1.2(d). Johnson claims that, had he fully understood the ramifications of U.S.S.G. § 1B1.2(d), he would not have pled guilty. He contends his guilty plea is therefore involuntary.

However, during Johnson's Rule 11 hearing, the presiding magistrate judge explained the sentencing process in detail. Arraignment Hr'g Tr. 6:4-8:14, DE-58. During the plea colloquy, Johnson was sworn and testified that he understood his rights, including how he would be sentenced, *id.* at 11:21-25, the maximum punishment he faced, *id.* at 12:20-14:15, and that he understood that any sentence recommendations contained in the plea agreement were not binding on the Court and that the district court judge was free to "impose whatever sentence she believes to be just and proper, including establishing

whatever guidelines she believes to be just and proper." *Id.* at 16:25-17:6. Based upon Johnson's responses, the Court determined that Johnson's plea was knowingly and voluntarily made. The Fourth Circuit reviewed the record and confirmed "that Johnson's waiver was knowing and voluntary." United States v. Johnson, 415 F. App'x 454, 455 (2011) (per curiam) (unpublished).

A defendant's own "[s]olemn declarations in open court carry a strong presumption of verity," Blackledge, 431 U.S. at 74, and "a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements" made in the course of a Rule 11 colloquy, Lemaster, 403 F.3d at 222. Here, Johnson was informed of the maximum possible term of imprisonment and the fact that the district court would consult the Guidelines in fashioning a sentence. The district court was not required to provide Johnson with an estimate of his sentence before accepting his guilty plea, *see* United States v. DeFusco, 949 F.2d 114, 118 (4th Cir. 1991), *cert. denied*, 503 U.S. 997 (1992), and any error made by Johnson's counsel in estimating his sentence does not constitute a basis for withdrawal of his guilty plea, *see* United States v. Lambey, 974 F.2d 1389, 1393-95 (4th Cir. 1992) (en banc), *cert. denied*, 513 U.S. 1060 (1994). Johnson's claimed lack of comprehension of the use of relevant conduct at sentencing does not invalidate an otherwise knowing and voluntary guilty plea. *See* United States v. Adams, Nos. 95-5237, 95-5269, 1996 U.S. App. LEXIS 14832, at *7-9 (4th Cir. June 19, 1996) (per curiam) (unpublished) (rejecting appellant's argument that his guilty plea was involuntary because he was not informed of the relevant conduct

underlying the conspiracy charge that would be considered for sentencing purposes). Accordingly, Johnson's claim fails as a matter of law.

In addition, because Johnson did not move to withdraw his guilty plea prior to the entry of judgment or on direct appeal, his claim is procedurally defaulted. *See* Bousley v. United States, 523 U.S. 614, 621 (1998) ("[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."); United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994) (holding that "the *Frady* cause and prejudice standard applies to . . . collateral challenges to unappealed guilty pleas"). To overcome procedural default, Johnson must first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent." Bousley, 523 U.S. at 622. For the reasons already stated, Johnson cannot satisfy the cause and prejudice standard because his claims do not provide a legally sufficient basis to challenge the voluntariness of the guilty plea. And, for the reasons stated *infra*, he fails to show he is actually innocent.

The undersigned therefore recommends that the government's motion to dismiss be granted as to Ground One of the motion to vacate.

### B. Ground Two: Factual Innocence

Johnson contends he is innocent of the Family Dollar store robbery and that it should not have been considered by the district court for purposes of sentencing. Notably, Johnson does not contend he is innocent of the conspiracy charge contained in count one of the indictment to which he pled guilty, which included as an overt act his participation as a look-out for the Family Dollar store robbery. Moreover, this issue was specifically

litigated before the district court at sentencing. After considering the evidence, the district court found that Johnson participated in the Family Dollar store robbery by serving as a look-out. Johnson has not provided in his § 2255 motion any new facts or evidence not already considered by the district court when it overruled this same objection at sentencing. A litigant "may not circumvent a proper ruling . . . by re-raising the same challenge in a § 2255 motion." United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009).

Even if he had new evidence, however, the Fourth Circuit has unequivocally held that a claim of "actual innocence" is not available to challenge the alleged misapplication of a Sentencing Guidelines provision. United States v. Mikalajunas, 186 F.3d 490, 494-95 (4th Cir. 1999). Moreover, by his plea agreement Johnson waived his right "to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting . . . [a] motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct." Such waivers are valid and enforceable in the Fourth Circuit to the same extent as a waiver of appellate rights. Lemaster, 403 F.3d at 220. Accordingly, Johnson's second claim also fails as a matter of law. The undersigned therefore recommends that the government's motion to dismiss as to Ground Two be granted.

### C. **Ground Three: Ineffective Assistance of Counsel**

Johnson first claims his counsel was ineffective by failing to investigate and understand that the robberies that were separately charged as substantive counts but dismissed under the plea agreement would nevertheless be counted against him as relevant conduct.

Johnson supplies no facts, however, from which the Court could find that defense counsel did not understand how the Guidelines would be applied to Johnson's case or that counsel misadvised Johnson with respect to the impact of the Guidelines. Even if defense counsel misadvised Johnson, however, an attorney's inaccurate estimation of the applicable sentencing range does not constitute ineffective assistance, so long as the defendant is informed of the maximum punishment provided by statute and advised that any estimate of the sentence is not a promise, as Johnson was here. Lambey, 974 F.3d at 1396.

Johnson next argues that his counsel was ineffective by failing to object to the government's purported breach of the plea agreement when the prosecutor did not recommend a three-point downward adjustment for acceptance of responsibility. However, the record does not support Johnson's claim. The plea agreement states that the government agreed to a downward adjustment for acceptance of responsibility, "provided that if Defendant's conduct prior to sentencing changes the circumstances with respect to any such factors, the Government is no longer bound to its position as to those factors." Plea Agreement, 6, DE-37. In this case, such a change in circumstances occurred because Johnson denied involvement in the Family Dollar store robbery. Sentencing Hr'g Tr. 27:21-28:24. As such, Johnson cannot establish that the plea agreement was breached, and there was no error to which counsel could object.

Johnson next asserts that his counsel was ineffective by failing to object to the government's presentation of evidence at sentencing, in particular the government's solicitation of testimony from Detective Nickel about robberies other than the Family

14

Dollar robbery that was at issue. Johnson argues that evidence of the other robberies only served to "further inflame the judge." Mem. Mot. Vacate, 12, DE-65-1. Johnson fails to acknowledge, however, the defense objection made to the carjacking enhancement, which made testimony concerning the other robberies relevant and unobjectionable. In addition, Johnson can demonstrate no prejudice resulting from this line of testimony, because detailed information concerning all three of the robberies was already known to the district court through the description of the offense conduct contained in the PSR.

Next, Johnson claims that his counsel was ineffective for not calling him to testify at the sentencing hearing regarding his lack of involvement in the Family Dollar store robbery. In addressing this type of ineffective assistance of counsel claim, the Court must distinguish between "certain decisions regarding the exercise or waiver of basic trial rights" that "belong[] exclusively to the defendant," and those "[d]ecisions that may be made without the defendant's consent [which] primarily involve trial tactics and strategy." United States v. Chapman, 593 F.3d 365, 368 (4th Cir. 2010). A criminal defendant has an absolute right of allocution prior to being sentenced, *see* Fed. R. Crim. P. 32(i)(4)(A), which Johnson exercised in this case. It is important to note that Johnson does not contend defense counsel prevented him from testifying—only that defense counsel failed to call him as a witness. The decision to call a defendant to testify in support of a sentencing objection is a matter of trial tactics and strategy regarding which "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. In this case, defense

counsel was able to proffer what Johnson would have testified to without subjecting him to potentially damaging cross-examination. Sentencing Hr'g Tr. 24:9-22. Such a tactical decision was professionally reasonable and cannot support a claim of ineffective assistance.

Even if Johnson alleged that defense counsel prevented him from testifying at sentencing, "to prove ineffective assistance of counsel based on his claim that his attorney prevented him from exercising his right to testify . . . [a petitioner] must show both that his attorney violated his right to testify and that his testimony had a 'reasonable probability' of changing the outcome." United States v. Rashaad, 249 F. App'x 972, 973 (4th Cir. 2007). Johnson does not attempt to demonstrate how counsel prevented him from testifying. Moreover, there is nothing to suggest that Johnson's testimony would have changed the outcome. Had he testified, Johnson presumably would have denied his involvement in the Family Dollar store robbery. But Johnson's denial of involvement was already before the district court, as was the evidence of his participation as a look-out. Johnson's mere speculation that he would have convinced the district court of his innocence had he taken the stand is insufficient to establish a reasonable probability that the outcome of the proceeding would have been different. As such, this claim fails. See Baker v. United States, Nos. 3:07-CR-435, 3:10-CV-762, 2011 U.S. Dist. LEXIS 97493, at *30-33 (E.D. Va. Aug. 30, 2011) (concluding that the petitioner failed to state a claim for ineffective assistance of counsel because there was no evidence to show that the petitioner's testimony would have altered the outcome of the trial).

Johnson further contends that his counsel was ineffective by failing properly to advise him concerning probation interviews and debriefings and that, as a result, he was denied credit for acceptance of responsibility. The record shows, however, that Johnson was denied credit for acceptance of responsibility because he denied and continues to deny, not simply in debriefings but through the sentencing hearing and in the present motion to vacate, his involvement in the Family Dollar store robbery. Sentencing Hr'g Tr. 28:12-24. Additionally, Johnson's own brief discloses that he was advised by his attorney to submit a statement to the probation officer accepting responsibility. Mem. Mot. Vacate, 3, DE-65-1. Accordingly, no colorable claim of ineffective assistance is stated.

Finally, Johnson claims that his counsel was ineffective for failing to object to the jurisdiction of the district court to enter the judgment. This claim is premised on Johnson's erroneous belief that judgment was entered against him on count four of the indictment, a substantive count in which he was not charged. However, the record clearly shows that judgment was entered against Johnson as to count one alone. Therefore, Johnson's ineffective assistance claim and jurisdictional challenge both fail.

For these reasons, the undersigned recommends that the government's motion to dismiss Johnson's claim of ineffective assistance of counsel in Ground Three of the motion to vacate be granted.

### D. **Ground Four: Jurisdiction**

Finally, Johnson asserts the district court was without jurisdiction to impose judgment against him. As noted *supra*, this claim is predicated on Johnson's mistaken belief that

the district court imposed a sentence on count four of the indictment.   The record is clear, however, that Johnson was only charged in counts one, two, three and five of the indictment, and that the district court imposed judgment only as to count one.   This claim therefore has no merit and should be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby RECOMMENDED that the government's motion to dismiss (DE-69) be GRANTED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Thursday, October 18, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE

18